No. 88-484

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

R. GAIL HERNANDEZ,

   Claimant and Appellant,

 -vs-

LELAND JENSEN, d/b/a ACME PRESS,
   Employer,
  and
STATE COMPENSATION INSURANCE FUND,

   Defendant and Respondent.

'89 FEB 23 AM 9 45
FILED
ED SMITH, CLERK
MONTANA SUPREME COURT

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy
      Reardon, Judge presiding.

COUNSEL OF RECORD:

  For Appellant:

    James Park Taylor; Geiszler, Taylor, Newcomer & McClain,
    Missoula, Montana

  For Respondent:

    Oliver H. Goe, Helena, Montana

       Submitted on Briefs: Jan. 5, 1989

         Decided: February 22, 1989

Filed:

_____
      Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal from the Montana Workers' Compensation Court concerns the court's denial of a request to lump sum benefits. Claimant, R. Gail Hernandez, petitioned to lump sum the majority of her entitlement alleging that financial hardship had created a pressing need for more household income. By placing the lump sum of benefits in various types of mutual funds and one real estate limited partnership, Hernandez hoped to increase her income by drawing a monthly rate of return from the investments. She also proposed that a portion of the lump sum benefits be used to establish funds generating a rate of return for her children's post secondary education, emergencies, protection from inflation, and a down payment for the purchase of a house. The increase in income from her various investments would in part be used to make house payments. The lower court held that the proposal failed to overcome the presumption in the Montana Workers' Compensation Act against lump summing benefits. We affirm.

Hernandez's monthly income from bi-weekly payments totals $579.00. Hernandez also receives food stamps and lives in federally subsidized housing. Her food stamp entitlement fluctuates between $150.00 and $190.00 per month, and monthly rent for her four bedroom apartment totals $104. Hernandez does not qualify for Aid to Families with Dependent Children or Social Security Disability benefits. Her attorney will begin collecting a portion of her benefits each month to pay her agreed attorney fees. Hernandez's husband lives in Peru and contributes little to the family income. Hernandez attempts to support five children and her sister-in-law using her benefits. The family income places the household well below the federal poverty line.

The Fund also contends Hernandez exaggerated her budget needs for medical expenses, and failed to pursue available programs for help in meeting her medical needs. The Fund also argues that the decision of the lower court may be justified by the negative impacts of Hernandez's plan. Hernandez's rent subsidy and food stamps would likely decrease with an increase in income. The Fund further asserts that an award of a lump sum to provide for educational expenses for Hernandez's children fails to overcome the presumption favoring periodic benefit payments.

There exists a high probability that in inflationary times the rate of return from investments purchased with a discounted lump sum of benefits will exceed the income generated by bi-weekly payments. 3 A. Larsen, The Law of Workmen's Compensation § 82.72(d) (1988). However, Montana law requires more than a showing of increased income through a feasible investment plan. LaVe v. School District No. 2 (1986), 713 P.2d 546, 548, 43 St.Rep. 165, 168. Otherwise, bi-weekly benefits would become the exception and lump sums the rule. LaVe, 713 P.2d at 548.

In passing on any lump sum proposal, the lower court must consider the best interests of the claimant, the claimant's family, and the public. Komeotis v. Williamson Fencing (Mont. 1988), 756 P. 1153, 1155-56, 45 St.Rep. 1098, 1101. In weighing these interests, the presumption favors bi-weekly payments. Komeotis, 756 P.2d at 1156. This Court affords the lower court with wide discretion in reviewing lump sum decisions because the lower court occupies the best position to familiarize itself with the needs of the claimant and the results which would probably follow granting or denying the petition for a lump sum. Komeotis, 756 P.2d at 1156.

4

Evidence in the record established that lack of funds adversely affects Hernandez and her family. Hernandez must borrow money to provide for adequate medical care. Her eldest son works to provide money to attend college part-time. Hernandez testified she could not afford to provide high school graduation expenses for her eldest daughter.

Hernandez also testified to housing problems due to low income. Her third story apartment is too small and makes coming and going difficult because she suffers from a bad back. Hernandez believes that some of her neighbors exert a bad influence on her children. She has investigated the feasibility of obtaining better housing using the proposed fund for making a down payment on a home. However, she revealed no definite plan for obtaining the financing needed to complete a home purchase.

Hernandez contends on appeal that she demonstrated that a lump sum entitlement satisfied a pressing need and served her best interest. Thus, according to Hernandez, the lower court erred in denying her request. Hernandez also contends that the lower court's decision is not supported by substantial evidence, and that the lower court denied her equal protection of the laws through its erroneous reasoning.

The State Compensation Insurance Fund (Fund) responds that Hernandez failed to make a showing sufficient to overcome the presumption favoring bi-weekly payments. For example, the Fund contends that evidence in the record demonstrates Hernandez exaggerated her financial problems. The Fund points out that Hernandez pays $20.00 per month for cable T.V., spends another $50.00 per month renting video tapes, and has already received lump sums to provide for medical debts and future medical expenses.

3

In this case, an investment plan accompanies a strong showing of financial need. However, the increase in income would probably be accompanied by loss of subsidies. The proposed investment plan has an element of risk. The house purchase plan necessitates a large debt which will further increase the claimant's expenses. The lower court considered the advantages and disadvantages of the plan and decided the presumption against lump summing controlled. Under these circumstances, we hold that the lower court acted within its discretion and that substantial evidence supports its decision.

Claimant's equal protection argument also fails. Hernandez contends that the lower court's decision rests on the classification of individuals. According to Hernandez, under the lower court's reasoning, individuals with business acumen may receive lump sum benefits, and individuals without business acumen may not. Hernandez argues that this classification improperly infringes on the "fundamental" right to receive workers' compensation benefits.

First, a review of the decision of the Workers' Compensation Court reveals that the decision rested on the particular facts of this case. Most importantly, the lower court considered the interests of Hernandez, her family, and the public. The lower court concluded that in light of the particular facts of this case, the legal presumption favoring bi-weekly benefits controlled. Thus, there exists no issue here on whether or not a classification based on possession of business acumen may survive equal protection analysis. AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices


Mr. Justice Fred J. Weber did not participate in this matter.

Mr. Justice John C. Sheehy, dissenting:


Under this incredible Opinion, it is the decision of the Court that it is better to keep this woman on public assistance and food stamps than to invest the monies to which she is entitled to give her an adequate living income.

Dear reader, look at the background of exploitation and carelessness that we sanction in the Workers' Compensation system.

On September 21, 1984, R. Gail Hernandez suffered an injury arising out of her employment with Acme Press in Missoula County. The Fund, as the insurer, accepted liability for her injury and has paid her weekly disability benefits from April 22, 1985 through the present. In her employment with Acme, she was receiving on-the-job training but in the ten months she worked there, her pay never increased from $5.00 an hour for a 40 hour week. She learned no skill while on the job, her employment having confined her to menial tasks in the printing shop.

Following her injury, her condition gradually deterioriated so that she was unable to continue her work with Acme. She reached maximum healing in the fall of 1986. The Compensation Fund refused to acknowledge that she was permanently totally disabled. She requested a determination of her permanent disability from the Workers' Compensation Court, as well as a lump sum distribution of a portion of her Workers' Compensation benefits. On September 22, 1987, a pretrial conference before the Workers' Compensation Court was held. There the Fund denied that she was permanently totally disabled and denied that it should pay any amount to the appellant in a lump sum. Three days before the trial,

however, which took place on November 2, 1987, the Fund finally admitted that her disability was permanent and total.

For the dispute as to her permanent disability, she has received no attorney fees as far as I can determine. Her monthly benefits of $579.00 per month are apparently now reduced by 25% because of her attorney fees to the sum of $434.25 per month. Why the Fund should not bear the attorney fees, I am unable to determine from the record.

At the time of the hearing, Mrs. Hernandez was a 41 year old married female. She is a high school graduate and an honorably discharged veteran who served in the United States Navy. She is married, but her husband lives in Peru, and does not send support on any regular basis. She has four children, ages 20, 18, 7 and 6, all of them live with her in federally-subsidized housing. She is their sole support and also the sole support for her sister-in-law and her sister-in-law's infant baby.

The children have dental problems, and a daughter is having medical problems involving fainting and stomachaches, but all dental and health care must be postponed because she is unable to provide medical insurance for herself or her children nor can she afford the deductible for Medicaid.

Her oldest son is 20 years old. He is presently attending the University of Montana on a part-time basis and is working part-time. All of the income which he earns goes toward his education and he cannot afford to go to school on a full-time basis. The oldest daughter is 18, and hopes to go either to a trade school or to college but she has no funds with which to pursue her education beyond high school. The position of the Fund is that she ought to go out and borrow the money.

This family's income places it at 53% of the poverty level established for a family of that size. Janet L. Finn,

a licensed social worker testified in detail about the problems that face low income families. Extended poverty leads to feelings of hopelessness and helplessness with little opportunity for future progress because the focus has to be on day-to-day survival. Such families experience a high drop-out rate in high school, are more likely to face educational difficulties in school and are also more likely to suffer from health problems. The apartment in which this family lives is a third floor apartment, with no elevator, in a neighborhood where frequent vandalism occurs.

The Workers' Compensation Court found that her lifetime benefits entitlement if she lived through her life expectancy is $246,050.99, less $23,651.82 which she has received in the past. Before the Workers' Compensation Court, she requested a lump sum advance of $170,065.00, of which $123,065.00 would be used to fund a monthly income for her of $1,500.00. There were other proposals for a downpayment on a modest home, a reserve fund, a minimal education fund for the children and protection against inflation. Two expert witnesses testified that the money could be invested and provide such benefits if the request were granted by the court.

Even deducting the amounts objected to by the Fund in this cause, her monthly budget approximates $600.00 per month, which obviously she is unable to meet with the income now provided her from her compensation benefits.

Why did the Workers' Compensation Court refuse her request which might give her at least an approach to the federal poverty income level? It said:

> The lump sum requested by the claimant not only seeks to ensure her of an income that she enjoyed prior to her injury, but in fact will increase her earnings by 50 percent and double her budget. The proposal of claimant here does not merely seek to allow her to sustain herself financially or return her to her asset situation as prior to her injury,

but will completely alter her economic status above that which she was enjoying at the time of her injury.

If this claimant had not been injured in the course of her employment, if that employment had not given her a degenerative disc condition at several levels, if she had not traded her lifetime working ability for the paltry benefits of the Workers' Compensation system, the foregoing statement of the Court might be tolerated. Her injury denied her every possibility of ever improving her situation and reduced her to grinding poverty. When she presents a plan that could offer some relief, she is denied because she might improve her income from a menial job and because of the policy of the Court and of the legislature respecting "passive income."

As I dictate this dissent, three-month treasury bills backed by the United States Government are yielding 8.5% interest per year. Two-year notes are yielding approximately 9% per year. By simply taking $100,000.00 of her entitlements and placing it under supervised investment in government securities, her present income could easily be doubled, and the whole principal saved. In the guise of preserving the "best interests of the claimant", this Court, hemmed in by prior caselaw that cannot logically be supported is actually adverse to her best interests.

Years ago, when much of the cash of the state was languishing around the country in no-interest bank accounts, it was decided to take advantage of investment of these monies through the Board of Investments. I suggest that section 39-71-2324, in cases such as this, allows funds to be transferred to the Board of Investments, supervised by that Board, and used to produce income from investments which would relieve the payments due from the fund. I see no legal reason why we could not order, in the

best interests of this claimant, that the Fund itself invest these monies on behalf of this claimant to provide her a living income.

Things have come to a pretty pass when this Court decides that it is better to keep a person on food stamps and public assistance than to relieve her situation through the proper use of her benefits. There is a hollow echo of Marie Antoinette in this Opinion: Let them eat foodstamps.

_John E. Sheehy_

Mr. Justice William E. Hunt, Sr., specially concurring:

I concur in the result reached by the majority here for the reasons that it has long been the policy (albeit a policy without a purpose) for the State of Montana to refuse its injured workers a lump sum that can be invested for their benefit. The proposals set forth in the dissent of Mr. Justice Sheehy are well worth consideration by the legislature.

The plight of this claimant demonstrates that being an injured worker in Montana is no big financial deal. To those who assume that there is rocking chair money in Workers' Compensation benefits, I recommend reading the facts of this case.

                                      Justice